FILED
 2010 May-05  PM 12:33
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ] |
| **Plaintiff,** | ] |
| v. | ] CR-09-BE-0409-W |
| **GEORGE JEROME SMITH,** | ] |
| **Defendant.** | ] |

### MEMORANDUM OPINION AND ORDER

This matter comes before the court on "Defendant's Motion to Suppress and Supporting Memorandum of Law" (doc. 33). The parties submitted briefs and the court held an evidentiary hearing on April 28, 2010. For the reasons stated on the Record, and clarified below, the court finds the motion is due to be DENIED.

This motion comes at an unusual time. The trial began on Monday, April 5, 2010. During the testimony of the Government's first witness Deputy Kline, the Government offered into evidence and played the videotape of the traffic stop at issue (Gov. Trial Ex. 1). The Government also presented a transcript of the audio portion of that videotape. (Gov. Trial Ex. 2). After viewing of the videotape and the conclusion of Deputy Kline's testimony, outside the presence of the jury, the court questioned Deputy Kline about when he contended Defendant Smith had consented to the search because the audio was difficult to hear. The court then gave counsel the opportunity to ask any questions

1

generated as a result of the court's questions. The court subsequently granted a mistrial on a totally unrelated ground – the failure to turn over to defense counsel a document material to the theory of defense. Defense counsel filed this motion to suppress on April 22, 2010. So prior to that hearing, the court had viewed the videotape and had a copy of the transcript of it for use on this issue.

Operative Facts

On June 24, 2006, three officers in two patrol cars stopped Defendant George Jerome Smith for speeding in Bibb County, Alabama at approximately 8:16 p.m. Smith could not produce his driver's license or insurance card, although he handed Deputy Kline an envelope that purported to contain paperwork relevant to the recent purchase of the automobile. After some discussion that appeared contradictory about when Smith obtained the car, where he had been and where he was going, Deputy Kline asked whether anything was in the car he should know about, such as "any kind of drugs, guns, alcohol, anything like that." As with many of Smith's responses recorded on the audio/video tape of the traffic stop, Smith's answer was inaudible. Deputy Kline then asked if he could look in the car, to which Smith replied, "huh?", then gave two inaudible responses to follow up questions. A few minutes later, Kline again asked about the contents of the car and whether he could look in it. According to the transcript prepared by Kline, Smith then "consented" to the search:

> Kline – Do you mind if I look in the vehicle?

>   Smith – Huh?
>
>   Kline – Do you mind if I look in the vehicle?
>
>   Smith – Yeah hold on trying to find my insurance[1]

After Smith admitted he had drunk two beers, Deputy Kline administered a breathalyzer test that revealed that Smith was not intoxicated. Deputy Kline testified at

---

[1] Kline – Let me ask you a question? You uh you ain't got nothing in here I need to know about. You don't have any kind of drugs, guns, alcohol, anything like that?
Smith – (in audible)
Kline – Do you mind if I look
Smith – Huh?
Kline – Do you mind if I look?
Smith – (in audible)
Kline – hold on your not answering my question
Smith – (in audible) hey can I call my wife though?
. . .
Kline – you got anything in the vehicle I need to know about?
Smith – Huh?
Kline – You got anything in the vehicle I need to know about?
Smith – Do I got anything in the vehicle that you need to know about?
Kline – Yeah any kind of alcohol? You been drinking today?
Smith – I drank two beers
Kline – You drank two beers
Smith – Yeah
Kline – Alright you got any alcohol in the vehicle?
Smith – I ain't got no alcohol in here period, I'm not like that
Kline – No drugs, no guns, no?
Smith – I, I just bought the car
Kline – Ok I'm just asking
Smith – I just bought the car
Kline – Do you mind if I look in the vehicle?
Smith – Huh?
Kline – Do you mind if I look in the vehicle?
Smith – yeah hold on trying to find my insurance

Government's Trial Exhibit 2 (April 5, 2010).

the hearing that, because he could not see what Smith was doing in the car, Kline asked Smith to step out of the car for officer safety at approximately 8:20 p.m.. As he got out of the car, Smith volunteered that he had a gun in the car, and when asked indicated that he did not have a permit for his "daddy's gun."[2]

Kline moved Smith to behind the vehicle and another officer retrieved a .38 caliber revolver from under the driver's seat. The officer also found what was later confirmed to be powder cocaine in the console. Smith was arrested for possession of the firearm without a permit and for possession of a controlled substance, issued a traffic citation for speeding, and transported to the Bibb County Jail. The Grand Jury returned a one count indictment against Smith on September 30, 2009, for unlawful possession of a firearm by a convicted felon.

In his motion to suppress, Smith does not challenge the validity of the initial stop, but argues that officers detained Smith longer than necessary for the traffic stop, and

---

[2]Kline – Let me get you to go on and step out I think you're gonna be alright to step out of the vehicle, man get your rag right here, I don't want to get it dirty
Smith – Yeah I'm fixing to be honest with ya'll so I , so I, hey I gotta gun up under the seat their [sic]
Kline – You gotta permit for that gun?
Smith – Shoot it ain't uh it ain't uh stolen
Kline – You got a permit for the gun?
Smith – It's my daddy's gun
Kline – But do you have a permit for the gun?
Smith – It ain't none of my gun
Kline – Alright step back here
Smith – Yeah yeah it's my daddy's gun
Id.

searched the vehicle without his knowing and voluntary consent in violation of the Fourth Amendment.

Applicable Law

The Fourth Amendment protects the right of persons to be free from unreasonable searches and seizures. A seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). A "routine traffic stop is only a limited form of seizure . . . more analogous to an investigative detention than a custodial arrest." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). The Supreme Court established the analytical framework for determining the legality of traffic stops in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).

Because Smith does not challenge the validity of the initial traffic stop, the court need not discuss the probable cause requirement for such a stop and moves on to Smith's challenge of the duration of the stop.

    A.    Length of Traffic Stop

Under the *Terry* standard "an officer's investigation of a traffic stop must be 'reasonably related in scope to the circumstances which justify the interference in the first place.'" *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting *Terry*, 392 U.S. at 20, 88 S. Ct. at 1879). When the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that [come] to his attention."

5

*United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991).  "Moreover, during a legal stop, an officer may ask questions, including questions not strictly related to the traffic stop, while waiting for a computer check of registration or examining a driver's license." *United States v. Ffriend*, 151 F. App'x. 778, 7780 (11th Cir. 2005) (citing *United States v. Hernandez*, 418 F.3d 1206, 1209 n.3 (11th Cir. 2005)); *see also Purcell*, 236 F.3d at 1279-80 (rejecting argument that an officer "exceeded the scope of a permissible traffic stop when he asked [the defendants] whether they had guns, firearms, or narcotics in their car").

A traffic stop must be of a limited duration and may not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *Boyce*, 351 F.3d at 1106 (internal quotation marks omitted); *see also*, *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999).  In *Pruitt* the Eleventh Circuit made clear that "[l]engthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances." *Id.*  "First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring." *Id.*; *see also Boyce*, 351 F.3d at 1106.  "Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." *Pruitt*, 174 F.3d at 1220.  While the Eleventh Circuit has never established a bright line test as to the permissible length of a traffic stop, the Court has held that a reasonable inquiry into the

6

driver's license, background, and history of the operator is lawful under the Fourth Amendment.

Deputy Kline's questions to Smith fell within the acceptable line of questions. Smith provided no driver's license, so Kline had another officer do a computer check of Smith's social security number to verify his identification. Further, Kline testified at the suppression hearing that he became suspicious because of Smith's contradictory statements about when and where he got the car, where he had been and where he was going; Smith's excessive nervousness; and the smell of alcohol. These reasonable suspicions justified extending the traffic stop for further investigation. *See Purcell*, 236 F.3d at 1279. In addition, from the initiation of the traffic stop to the recovery of the gun took less than ten minutes – well within the length of time found to be reasonable by the Eleventh Circuit. *See United States v. Gil*, 204 F.3d 1347, 1350-51 (11th Cir. 2000) (finding a 75-minute stop not unreasonable). Neither the scope of questioning nor the duration of the stop justify suppression of the recovered gun.

  B.  Consent to search

Defendant Smith testified that he never gave consent to search his vehicle. The video tape and its transcript reflect that Officer Kline repeatedly asked permission to search. Defendant Smith either failed to answer, answered inaudibly or said "huh?." When asked a fifth time, according to Kline's transcript, Smith responded "Yeah, hold on . . . ." Officer Kline took that response to mean that Smith consented to the search.

At the hearing, Defendant Smith testified that he knew he could refuse consent to search the car, that he never said "no, you cannot search," that none of the officers displayed weapons or took coercive or intimidating actions, but that he did not think he was free to leave. He admitted that he was not arrested until after the search of the car revealed the gun and narcotics. He did not receive the traffic citation until he arrived at the jail.

The entirety of the transcript of the stop shows that Smith repeatedly evaded questions asked by Officer Kline about other matters as well as whether he could search the car. In addition, the poor audio quality of the tape did not clearly reveal an affirmative response to any of Kline's requests for permission to search the car. Therefore, the court is not convinced that Smith gave unequivocal voluntary consent to search the vehicle. The court is convinced that Officer Kline believed that Smith consented to the search. The Government, however, has the burden to <u>prove</u> that the Defendant consented to the search, *United States v. Garcia*, 496 F.2d 670, 673 (5th Cir. 1974)[3]; the court is not convinced under the totality of the circumstances in this case that the Government met its burden.

    C.    <u>Probable Cause to Search</u>

Further in considering all of the circumstances, the court is not convinced

---

[3]After the Fifth Circuit split and the Eleventh Circuit was established, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

that Defendant Smith was indeed free to go at the time he supposedly consented to the search. Officer Kline had not issued the speeding citation, which Defendant Smith testified he did not receive until he was at the jail. Officer Kline testified that, based upon his reasonable suspicion of criminal activity, he would have engaged the drug-detection canine to walk around the car if Smith had not consented to the search[4]; if it had not alerted, according to Officer Kline, Smith would <u>then</u> have been free to leave. Thus, because consent, if any, was given while Smith was detained and not free to go, such "consent" was not voluntary. *See United States v. Ramirez-Chile*, 289 F.3d 744, 752 (11th Cir. 2002) (whether defendant "free to leave" factor in determining whether consent voluntary); *cf.*, *Purcell*, 236 F.3d at 1282 (11th Cir. 2001) (retention of driver's license not determinative of whether consent was voluntary).

Officer Kline provided ample justification for his objectively reasonable suspicion of illegal activity by Smith to prolong the traffic stop as he testified at the hearing. He also had legal justification to ask Smith to exit the car for safety reasons. *See Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle). Immediately upon stepping out of the vehicle, Smith voluntarily stated that he had a gun in the car for which he did not have a permit. The carrying of a gun without a permit violates Alabama law. Ala. Code § 13A-11-73 (1975). Smith's voluntary statement that a gun was in the car for which he had no

---

[4]Subsequent to the retrieval of the gun and discovery of the drugs, another officer did bring the dog out of Deputy Kline's patrol car and it alerted on Smith's car.

permit gave rise to probable cause to suspect evidence of criminal activity in the car and justify a search.  The warrantless search, thus, fell within the automobile exception, which "permits warrantless vehicle searches if the vehicle is operational and agents have probable cause to believe the vehicle contains evidence of a crime."  *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006).

Although not cited by either party, *United States v. Chatman*, 342 F. App'x. 555 (11th Cir. 2009)[5] involved a similar fact pattern and provides instruction.  Chatman argued that *this* court erred by denying his motion to suppress a gun found during a traffic stop, but the Eleventh Circuit disagreed and affirmed.  During the course of a traffic stop, the officer asked Chatman whether anything illegal was in the car, to which he replied that a gun was in the glove box.  When asked if he had a permit, Chatman replied no.  After securing Chatman in the patrol car, the officer then retrieved the gun from the glove box.  The Eleventh Circuit concluded that "the warrantless search of the glove compartment in this case was justified under the automobile exception because Chatman informed the officers that there was a firearm located there and that he lacked the required permit."  *Id.* at 557.

Likewise, here the voluntary statement by Smith that a gun was in the car for which he did not have a permit provided the necessary probable cause to justify a

---

[5]Although the court is aware of the rules governing citation of unpublished opinions, because the *Chatman* case involved the affirmance on appeal of a decision by this court on a similar issue, one would have expected it to be mentioned.

warrantless search. The officers' seizure of the weapon was justified by the offense of carrying a firearm without a permit and on safety grounds once Defendant Smith disclosed its presence. Therefore, the motion to suppress is DENIED.

DONE and ORDERED this 5th day of May 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE